# Wytheville

## F. A. ROBERTSON v. COMMONWEALTH OF VIRGINIA.

June 10, 1937.

Present, All the Justices.

The opinion states the case.

*Paul H. Coleman*, for the plaintiff in error.

*Abram P. Staples, Attorney-General*, and *D. Gardiner Tyler, Jr., Assistant Attorney-General*, for the Commonwealth.

Eggleston, J., delivered the opinion of the court.

F. A. Robertson, hereinafter called the defendant, has been convicted of manufacturing ice cream without a permit in violation of Code, section 1215, as amended by the Acts of Assembly of 1934, chapter 391, page 826.

The view we take of the matter makes it necessary that we discuss only one contention of the defendant, namely, that he is not engaged in the manufacture of ice cream within the contemplation of the statute.

The essential facts are not in dispute. It appears that

shortly before the commencement of the present proceeding Robertson installed in his drug store, in the city of Lynchburg, a machine recently put on the market, designed for freezing ice cream, and called a "counter freezer." This consists of a porcelain covered cabinet with several compartments in which the mixed material is placed for freezing. Attached to the cabinet is an electric refrigerating unit which freezes the mixture into ice cream. As the name implies, the counter freezer is intended for use adjacent to the store counter and in plain view of the customers.

The defendant regularly purchases from the Pet Milk Company of Abingdon, Virginia, a prepared mixture containing milk and the other ingredients of which ice cream is made. Except for the addition of some flavoring this mixture is ready to be frozen when it leaves the plant of the Pet Milk Company, where it has been previously pasteurized and prepared strictly in accordance with the sanitary requirements. The mixture comes to the defendant in sealed ten-gallon containers. It is poured by him into smaller containers and placed in a sanitary refrigerated storage chamber where it remains until it is ready to be frozen. From time to time, as the occasion demands, the mixture is poured from these storage containers into the counter freezer and frozen into ice cream, which is retailed to the defendant's customers.

The counter freezer is air-tight and the mixture is entirely free from contamination during the freezing process and so long as it remains in the freezer.

The State Director of the Division of Dairy and Food, acting through one of its inspectors, declined to issue to the defendant a permit for manufacturing ice cream on the ground that his place and method of manufacture did not comply with the terms of the statute. When the defendant proceeded to sell the ice cream thus made by him, his arrest followed.

The Commonwealth makes no criticism of the freezing machine itself. But it contends that the freezer should not be located, as it is, in the main part of the store, which is frequented by the customers, where there is continuous smoking; that it should be located and the mixture poured in a

room separate and apart from the main store of the defendant, which room should be equipped with such flooring and ceiling as is prescribed by the terms of the statute hereinafter stated.

The statute, as amended, defines "ice cream" and the common varieties thereof,—"fruit ice cream," "nut ice cream," "chocolate ice cream," etc.,—and specifies the ingredients of each. Ice cream not meeting the specifications in the statute is deemed to be adulterated. It prescribes how milk used in such ice cream shall be pasteurized, and how the cans and utensils used in the manufacture, handling, storage, and transportation of ice cream shall be washed and sterilized. It prescribes that "Shipping bags and insulated jackets shall be clean when leaving the ice cream plant."

The statute further prescribes that "All buildings, rooms and places where ice cream and/or similar products are manufactured must be well lighted, ventilated and effectively screened. The floor must be made of concrete or other impervious material and must be graded to drain properly. The floor must be flushed with water often enough to keep it clean. The walls and ceilings must be constructed so as to permit easy cleaning. The walls and ceilings must be painted with a light colored paint as often as deemed necessary by the inspectors. All storage rooms and storage cabinets used for the storage of ice cream must be used only for the storage of ice cream, ices, sherbets and milk products.

"Every place in which ice cream is manufactured must be provided with a sanitary toilet constructed and operated in accordance with the regulations of the State Board of Health.

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

"Chewing tobacco and smoking in rooms used for the manufacture and handling of ice cream and similar products is prohibited."

Subsection (c) of the act provides that "It shall be unlawful for any person, firm, association or corporation to manufacture in the State of Virginia \* \* \* or to sell or offer for sale therein, or to distribute any ice cream or frozen products as defined in this act who does not possess an unrevoked permit from the Commissioner of Agriculture and Immigration

issued by the Director of the Division of Dairy and Food."

It is conceded that if the statute does not apply to the operations of the defendant, then no permit was required of him and this prosecution must fail.

■ The statute does not define the term "manufacture." While the work done by the defendant, which consists in pouring the prepared mixture from the containers into the freezer and freezing it into ice cream, may be "manufacturing" within the broad meaning of that word, yet we do not think that the statute was designed to reach operations of that character.

The specifications for the contents of the various kinds of ice cream, for the pasteurization of the milk used, for the type of building in which the work is to be done, and for the handling, storage and transportation of ice cream, all convince us that the framers of the statute had in mind operations of a much wider character than those performed by the defendant here.

Indeed, the evidence shows that the method employed by the defendant was not in common use when the present statute was enacted. Doubtless it was unknown to the framers of the law.

■ We think the act was intended to apply to a plant where the complete manufacture of ice cream takes place, that is, where the milk is pasteurized and the mixture is prepared and frozen. Indeed, the undisputed testimony is that the proper pasteurization and handling of the milk and the preparation of the mixture is the most essential step in insuring the purity of the ice cream. In the present case this takes place at the plant of the Pet Milk Company, strictly in accordance with all sanitary requirements. The defendant does no part of this.

■ It is true, as the Commonwealth points out, that there is in the statute no particular language which states that it is not to be applied to a business such as is conducted by the defendant. But the same subsection (c) of the statute, which requires a permit for every *manufacturer* of ice cream, requires a like permit for every *seller* thereof. And yet, according to

the testimony before us, the department has construed this section as not being applicable to a retail seller of ice cream. If the retail seller is entitled to the benefit of the doubt as to the applicability of the statute, why is not the same true of the defendant, who merely operates a machine which freezes into ice cream for his retail trade a properly prepared mixture?

We are not unmindful of the fact that the statute under review is a sanitary measure, and that its object and purpose are highly to be commended. But we must not overlook the further fact that this is a criminal prosecution wherein the defendant is entitled to the benefit of any reasonable doubt as to whether or not he has violated the law. To say the least, it is extremely doubtful whether this statute was intended to apply to the operations undertaken by him.

Our conclusion is that the judgment should be reversed and the prosecution dismissed.

*Reversed.*